## STATE of Maine

### v.

### Charles DOWLING and Lyndell Dorr.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1982.

Decided Dec. 7, 1982.

Genevieve C. Stetson (orally), Asst. Dist. Atty., Machias, for plaintiff.

Earle S. Tyler, Jr. (orally), Milbridge, for Charles Dowling.

Lyman L. Holmes (orally), Machias, for Lyndell Dorr.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

CARTER, Justice.

Following a hearing in the Superior Court, Washington County, the justice dis-

missed the indictments charging both defendants, Charles Dowling and Lyndell Dorr, with shooting a domestic animal, Class E, 12 M.R.S.A. § 7406(14) (1981) and with having a loaded firearm in a motor vehicle, Class E, 12 M.R.S.A. § 7406(8) (Supp.1982–83) and charging the defendant, Charles Dowling, alone, with the failure to render aid, Class C, 12 M.R.S.A. § 7406(15) (1981). Pursuant to 15 M.R.S.A. § 2115–A (1980), the State appeals the dismissal of the indictments. We address the question whether there was an abuse of discretion by the trial justice in granting the dismissal. We vacate the dismissal of the indictments and remand the case to the Superior Court for further proceedings.

The defendants were to be tried separately. On July 14, 1981, in a jury trial involving the defendant Dowling, the Superior Court granted the defendant's request for a mistrial. The case was rescheduled for trial. The defendant Dowling, thereafter, filed a motion seeking discovery of the victim's medical records under Rule 16. That motion was denied.

On November 2, 1981, the State filed a motion to continue because the victim, the State's key witness, Robert Dyer, had had open heart surgery and was recovering in Virginia. Over objection of the defendants, the continuance was granted by the Superior Court. The court rescheduled the trial dates for both defendants for the last week in January of 1982.

Because the victim was still too ill to travel, on January 15, 1982, the State filed another motion for continuance. In response, defendant Dorr filed a motion to dismiss claiming that the State had violated the defendant's right to a speedy trial under the sixth amendment of the United States Constitution and article 1, section 6 of the Maine Constitution. On January 21, 1982, the Superior Court heard the motions. The court denied defendant Dorr's motion to dismiss. Arguing against the motion to continue, defendant Dowling claimed that

he had been severely burdened by the numerous delays, resulting from the victim's ill condition. Defendant Dowling then renewed his request for medical evidence of the victim's condition. The court stated on the record that "the State, to the extent that it is able to, is to furnish Mr. Tyler with whatever medical information it can obtain on Mr. Dyer from the Virginia facilities." When defendant Dorr also requested the medical records, the court similarly granted the request. The court's formal order provided:

> State's motion to continue: The motion is granted subjected to condition the case is to be tried March 1982 term, and State to obtain and make available to both Defense Counsel medical records of Witness Dyer from Virginia treating physicians and hospitals prior to March 1, 1982.

Although the victim was able to attend the trial,[1] and the case was scheduled for trial during the March term, the justice who was supposed to hear the case recused himself. In April, the cases were rescheduled for the period of May 24, 1982 to June 4, 1982.

By April 8, 1982, both defendants had filed motions to dismiss alleging that the State had not produced the documents, thereby failing to comply with the condition imposed upon the continuance. On May 6, 1982, the Superior Court heard the motions. The defendants argued that they never had received any of the medical records from Virginia. The State claimed that although the victim's doctor said he would send a summary of the medical records, he never sent anything. The prosecutor also said that the State had made a number of phone calls to the doctor. The court asked whether the State had filed any motions for relief from the order. The State answered that as a result of an oversight, no such motion had been filed. The court determined that although the delay did not result from any fault on the part of the State, the State had failed to comply with the court order. As a

---

1. The fact of the availability of the witness for trial was established in the proceedings before the second justice by a representation of the prosecutor that such was the fact. That representation went unchallenged by defense counsel and is not challenged on appeal.

sanction, the justice refused to permit the victim to testify. When the State told the justice that the victim was its only witness, the justice decided to dismiss the indictments against both defendants.

By dismissing the case for noncompliance with the condition placed upon the grant of the motion to continue, the justice failed to appreciate the defendant's purpose in seeking the records and, therefore, the court's purpose for the imposition of the condition. The entire context of the proceedings resulting in ordering the State to produce the medical records displays the justice's motivation to protect the defendant's right to a speedy trial if the State claimed the witness was unavailable on the next scheduled trial date. At the hearing, the defendant had asserted that the prosecutor knew of the victim's condition and should have done something to preserve the status of this case other than filing a motion a week before it was scheduled for trial. According to the defendant, "the lateness of this motion, it is a great burden upon, not only Dowling, but Dorr also. . . . [I]t's too great a burden on him, and the Court should not allow this to go on." In addition, defendant Dowling had stated that he had been severely burdened both emotionally and physically by the numerous continuances which had been granted to the State. Asserting that these delays resulted through no fault of his own, the defendant had argued that he had a constitutional right to a speedy trial. Because the defendant complained about the delays, it is clear that he requested the medical documents so that if the State subsequently filed another motion to continue due to the unavailability of the victim, the defendant could use the medical records to support his claim for the violation of the defendant's right to a speedy trial. Since defendant Dorr requested the same documents immediately after defendant Dowling had made his argument, we conclude that Dorr sought the records for the same reason as Dowling.

■ Granting defendants' request, the court conditioned the grant of the State's motion to continue upon the State supplying the defendants with the Virginia medical records of the victim. Imposing reasonable conditions upon the granting of a continuance is within the discretion of the trial court. *State v. LaDue,* 164 Minn. 499, 501, 205 N.W. 450, 451 (1925); *see Love v. People,* 132 Colo. 399, 400, 292 P.2d 970, 970–72 (1955); *Berry v. State,* 203 So.2d 336, 337 (Fla.App.1967). The court's purpose for the imposition of such a condition was to resolve any potential speedy trial claim of the defendants in the event the State claimed the witness remained unavailable on the next scheduled trial date. The justice correctly anticipated that if such event should occur, defense counsel should, in fairness, be in a position to determine promptly whether the further delay by the State was justified and, if not, to assert a motion to dismiss based upon the defendants' right to a speedy trial. The production of the witness's medical records would secure that result and also place the court in a position to rule expeditiously and on an informed basis on any such motion.

■ There was then no claim by defense counsel that the records were sought as discovery on the substantive issues which would be raised in a trial of the merits of the case. Nothing in the record indicates any intent on the part of the justice in imposing the condition that the records be produced for that purpose. In addition, no provision of M.R.Crim.P. 16 would have required the State to produce the records through discovery. Rule 16(a) provides only for discovery of materials potentially subject to suppression. Rule 16(b) expressly provides only that the defendant is entitled to the production of documents which are within the State's control. The victim's Virginia medical records were not within the possession or control of the State. Rule 16(c) only gives the defendant access to the names and addresses, statements, and record of prior convictions of a witness. The medical records in this case do not fall under any provision of Rule 16. If defense counsel wanted the records for their relevance to issues of substance to be adjudicated at a trial on the merits, he was required,

through his own efforts, to secure the availability of the records at trial. If he could not obtain the records by voluntary production from their custodian, compulsory means of obtaining production were available which he should have invoked.[2]

■ The initial sanction imposed upon the State for its failure to produce the documents prevented the victim from testifying. Such a sanction displayed an intent either to penalize the State for what appeared to be a disregard of a direct order of the court or to avoid prejudice to the defendant *at trial* on the assumption that the State had been directed to produce the documents as discovery materials to which the defendant was entitled to prepare for trial. If the court imposed the sanction to penalize the State, if that was the basis of its action, the court erred because the purpose of the production of the medical records had disappeared as the State's witness was then available for trial during the March term as scheduled. The State's failure to produce the records did not frustrate the purpose underlying the original justice's imposition of the requirement of their production. Any question as to the physical condition of the victim had, at that point, became moot as the possibility of delay resulting from the witness's unavailability no longer existed.

To the extent that the court refused to permit the witness to testify to avoid prejudicing the defendant at trial, the court erred because the defendant was not entitled to the records as materials discoverable in preparation for trial. As discussed previously, the records were not discoverable for

that purpose and the justice who imposed the condition did not intend to require their production for that purpose.

■ Consequently, under the first alternative, the sanction was inappropriate because it was too severe in view of the fact that the purpose of the condition had not been violated. Under the second alternative, it was erroneous because based upon a misunderstanding of the purpose of the required production of the records. The trial court, therefore, abused its discretion by dismissing the case.

■ Today's ruling that the sanction of dismissal was improper should not be taken, in any way, to indicate that we condone the prosecution's disregard of the court's order directing the production of the medical records. While that order remained in effect, it was the prosecution's obligation to use all due diligence to comply with it on the most expeditious basis possible. The prosecutor represented to the court below and to this Court in oral argument that, on several occasions, phone calls had been made to the victim's treating physician requesting copies of his medical records. According to the prosecutor, the doctor promised to send the prosecutor a "summary" of the records but declined to provide all of the records because of their volume. The prosecutor obtained only an oral authorization from the victim for release of the records. No further action was taken by the State over a period of four months to obtain the records. Neither the records nor the promised summary had been received even by the time of oral argument on this appeal. Ap-

---

**2.** Maine has enacted the "Uniform Act to secure the attendance of witnesses from without a State in criminal proceedings." 15 M.R.S.A. §§ 1411–15 (effective February 21, 1939). Section 1414 of the Act provides:

> If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this State, is a material witness in a prosecution pending in a court of record in this State or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under

the seal of the court stating these facts and specifying the number of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this State to assure his attendance in this State. This certificate shall be presented to a judge of a court of record within whose territorial jurisdiction the witness is found.

The State of Virginia, where the records, and presumably their custodian, were located, has adopted the same Act. Va.Code 1950 §§ 19.2–272 to 19.2–282.

parently, no effort was made to contact the medical records custodian at the hospital where the records were kept. Such efforts do not constitute a good faith effort, through the exercise of due diligence, to comply with a valid order of the court.

■ Once the prosecutor became aware that the victim would be available for trial, it was not appropriate to substitute prosecutorial judgment for the force of the judicial mandate represented by the court order. It was then encumbent upon the prosecutor to bring the fact of the availability of the witness to the attention of the court and to seek relief from the order, either because the records could not be obtained through due diligence or because the availability of the victim for trial mooted the issue which required their production and obviated the defense counsel's need for them. It was for the court, not the prosecutor, to decide if changed circumstances justified the abrogation of the requirements of the court's order.

By disregarding the court's order, without making proper efforts to obtain the records or to ascertain that they could not be obtained, the prosecutor ran a serious risk that if the victim was not available for trial at the proper time the defendants would be relieved of the serious charges against them for a reason which had nothing to do with the merits of the case, namely, the violation of their constitutional right to a speedy trial. Such conduct, in addition to displaying an improperly cavalier attitude toward a clear and unequivocal order of the court, reflects an inadequate perception of the public interest in the proper performance of the prosecutor's function in achieving the vigorous prosecution of those who violate the criminal laws of this State.

The entry is

Judgment of dismissal vacated.

Remanded to the Superior Court for further proceedings.

All concurring.