439 So.2d 246 (1983)
Anthony DUMAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-2293.
District Court of Appeal of Florida, Third District.
September 13, 1983.
Rehearing Denied November 7, 1983.
*248 Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Steven R. Jacob, and Jack Ludin, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
The question presented for review is whether record evidence showing an information stamped "waived trial by jury with consent of state", above which is the signature of the defendant, is sufficient, on a direct appeal from a judgment of conviction, to support a finding of an effective waiver of that constitutional right. We hold that it may be sufficient, and is in this case.
The following exchange appears in the record on the date the case was called for trial:
PROSECUTOR: This [case of Anthony Dumas] was set for a bench trial at eight o'clock. We did not try the case.
I believe we are in the process of plea negotiations at this time, and we may pass it.
Marilynn [defense counsel], is that correct?
DEFENSE COUNSEL: That is correct.
THE COURT: All right.
(Thereupon, other matters were heard, after which the following proceedings were had:)
THE COURT: Anthony Dumas.
DEFENSE COUNSEL: We are ready for trial.
The entire record on the waiver question consists of that colloquy and the signed written waiver on the information. On these facts, the present case is virtually *249 indistinguishable from Viggiani v. State, 390 So.2d 147 (Fla. 3d DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981).
In Viggiani v. State, we held that a defendant did not effectively waive his right to trial by jury where the minimal requirements for a valid and effective waiver were not met, i.e., that the defendant's signature be executed in open court and incorporated either in the transcript of the proceedings or otherwise made part of the record. We recede from Viggiani.[1]
Where a record shows a waiver, although there is no further evidence that the waiver was executed in open court,[2] there is a presumption that in the regular course of the proceedings the defendant, through his attorney, learned of, and waived his constitutional right to jury trial. The presumption which springs from defendant's signature on the formal charging document[3] denoting waiver of jury trial, is, more precisely, that the defendant was advised by his attorney of his right to trial by jury, the consequences of relinquishing that right, and any advantages to be expected therefrom,[4] all of which makes for the knowing and intelligent waiver required by *250 Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).[5]
The effect of the presumption is merely procedural, shifting the burden to the accused to produce evidence that the record showing of waiver, and all that it connotes, is untrue. The most important consideration given for the creation of a presumption of law is probability, i.e., that "proof of fact B renders the inference of the existence of fact A so probable that it is sensible and time-saving to assume the truth of fact A until the adversary disproves it."[6]
Defendant contends here that trial by jury is a fundamental constitutional right, guaranteed an accused, which is forfeited only by a waiver which is voluntary and intelligent, citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); and Floyd v. State, 90 So.2d 105 (Fla. 1956). There is no disagreement on that point. Significantly, he does not allege here that his waiver was not knowingly or intelligently given, nor that he was prejudiced by any failure of an in-court examination to ascertain whether the waiver of jury trial was knowing, free and intelligent. See United States v. Tobias, 662 F.2d 381 (5th Cir.1981), cert. denied, 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). The real question presented is whether the record must affirmatively show that a defendant's waiver of a right to trial by jury was in fact knowing and intelligent. In support of his argument that there is a constitutional requirement for an affirmative showing of jury waiver, appellant directs us to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) which holds that there is reversible error under the due process clause of the fourteenth amendment where the record does not disclose that the defendant voluntarily and understandingly entered a guilty plea.
That Boykin v. Alabama concerned a plea of guilty instead of a waiver of trial by jury is a crucial distinction. An analogy of Boykin to a waiver of jury trial was rejected by the Ninth Circuit in United States v. Reyes-Meza de Polanco, 422 F.2d 1304 (9th Cir.), cert. denied, 397 U.S. 1081, 90 S.Ct. 1536, 25 L.Ed.2d 817 (1970), which held that the record, containing a written form signed by the appellant and her trial counsel, adequately reflected a waiver of right to jury trial in the absence of the court's personal interrogation of the appellant as to that waiver. A waiver of a jury trial does not foreclose an adversary proceeding on points of fact and law, nor does it preclude appellate review of the court's findings; thus, it does not have the weighty consequence of a guilty plea. A guilty plea, as noted in Boykin v. Alabama, is essentially the conviction and involves the simultaneous waiver of numerous constitutional rights  the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. While a guilty plea ends in judgment, jury waiver is often a tactical decision. Jackson v. United States, 394 F.2d 114 (5th Cir. *251 1968); Ciummei v. Commonwealth, 378 Mass. 504, 392 N.E.2d 1186 (1979).
A comparison of Florida Rules of Criminal Procedure 3.260 (waiver of jury trial) with 3.170(j) (responsibility of court on plea of guilty) evidences the Florida Supreme Court's intent, consistent with Boykin v. Alabama, to establish more stringent requirements for a valid guilty plea than for a valid waiver of jury trial. Rule 3.170(j) requires that before a plea of guilty may be accepted, the judge shall determine, in open court and on the record, "that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness, and that there is a factual basis for the plea of guilty." In contrast, Rule 3.260 requires only a valid written waiver of jury trial by the defendant, with the state's consent. It has never been a requirement in this state by statute, rule, or case law that the court inform the defendant of his right to a jury trial, or that the court interrogate the defendant as to the voluntariness of his waiver, or that there be a record examination of the defendant on his understanding of the waiver. See Sessums v. State, 404 So.2d 1074 (Fla. 3d DCA 1981) and cases collected therein.
In Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), seven members of the United States Supreme Court held that where a defendant charged with first-degree murder had not been informed that intent to cause death is an essential element of second-degree murder  the offense to which he was advised to plead guilty  the conviction was properly set aside by the district court. Four members of the Court, in a concurring opinion, equated the guilty plea to a fact-finding process requiring that the defendant be advised of, or otherwise have knowledge of, the essential elements of the crime charged before entering a guilty plea to that offense. Two members of the Court dissented, expressing a contrary view that where the accused was represented by competent attorneys who, after consideration of all the evidence, advised him, as a tactical matter to plead to second-degree murder, the test to be applied in determining whether the defendant was properly so advised was one based on the day-to-day practices of reasonably competent attorneys in the business of representing criminal defendants. In other dicta, which set the stage for things to come, the majority in Henderson also noted:
[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. 426 U.S. at 647, 96 S.Ct. at 2258.
In the more recent case of Marshall v. Lonberger, ___ U.S. ___, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), the Court, by a 5-4 majority, abandoned the longstanding view that presumptions of law were inadequate to satisfy the requirement that a plea of guilty be voluntary and intelligent. Lonberger contended at his Ohio murder trial that when he had entered a plea to aggravated battery in an unrelated Illinois case years earlier, he did not understand that the plea included a charge of attempted murder, as that offense was not specifically named in the formal statement of conviction and was not clearly referred to when the judge questioned Lonberger at the guilty plea proceedings regarding the offenses to which he was pleading guilty. Over that objection, the record of his prior conviction was admitted into evidence in both the trial and penalty phases of the Ohio first-degree murder prosecution. The United States Court of Appeals for the Sixth Circuit, in reversing the conviction, held that evidence of the attempted murder conviction should not have been given to the jury in Lonberger's murder trial. In reversing the Sixth Circuit and upholding the admission into evidence of the Illinois conviction, the United States Supreme Court embraced the dicta from Henderson v. Morgan, holding:
Under Henderson, respondent must be presumed to have been informed, either by his lawyers or at one of the pre-sentencing proceedings, of the charges on which he was indicted. Given this knowledge *252 of the indictment and the fact that the indictment contained no other attempt charges, respondent could only have understood the judge's reference to "attempt on [victim], with a knife" as a reference to the indictment's charge of attempt to kill. ___ U.S. at ___, 103 S.Ct. at 852-53, 74 L.Ed.2d at 661.
As noted by the minority in a dissent written by Justice Stevens, who also wrote for the Henderson court:
[T]his Court fails to explain its leap from notice of the charges to notice of which charges were included in the guilty plea. ___ U.S. at ___, 103 S.Ct. at 857, 74 L.Ed.2d at 666.
Thus, Marshall v. Lonberger may be interpreted as a departure from Henderson v. Morgan, and perhaps from Boykin v. Alabama[7] as well.
The guilty plea cases have been examined here only to illustrate that appellant's argument from them by way of analogy is faulty. The Florida rules of procedure impose upon the court the duty to make a judicial inquiry for voluntariness at the time a guilty plea is offered, while these same rules clearly permit voluntariness to be presumed from the fact of a written waiver of jury trial which appears in the record. The waiver of a jury trial is a procedural matter which is governed by rules adopted by the supreme court. State v. Garcia, 229 So.2d 236 (Fla. 1969).
Our determination on this direct appeal does not preclude defendant from seeking review of the waiver of jury trial by means of a motion for post-trial relief pursuant to Florida Rule of Criminal Procedure 3.850, whereby he may allege for the first time, as fundamental error,[8] that the waiver was not voluntarily and intelligently made. See United States v. Hunt, 413 F.2d 983 (4th Cir.1969) (question of whether a waiver of jury trial was freely and voluntarily made may be raised by post-trial motion under 28 U.S.C. § 2255); United States v. Goodwin, 446 F.2d 894 (9th Cir.1971) (facts outside the record which would support appellant's allegation that his waiver was not knowingly and voluntarily made must be presented in an application for post-conviction relief under 28 U.S.C. § 2255 rather than on direct appeal). On this point we are aware of a contrary decision by a panel of this court, Durcan v. State, 383 So.2d 248 (Fla. 3d DCA), rev. denied, 389 So.2d 1109 (Fla. 1980), which holds that fundamental constitutional errors can be waived, for the purpose of a collateral attack on a conviction, if not raised in the trial proceedings or in the direct appeal. None of the cases cited in the opinion support the proposition. We hereby recede from Durcan v. State.
While ABA Standards for Criminal Justice, Waiver of Trial by Jury 15-1.2(b) (2d Ed. 1980), cited by the dissent, unquestionably states the better practice, and courts are accordingly encouraged to make an inquiry of the defendant appear on the record, we think it unnecessary to adopt a prophylactic rule that the absence of a record inquiry as to waiver of jury trial, without more, requires reversing a conviction and ordering a new trial. This case particularly demonstrates why such a rule is impractical. Appellant did not attack the waiver in the trial court, there is nothing in the record which suggests that the waiver *253 was not voluntary or intelligent[9] and, more importantly, appellant has not even asserted by this appeal that the waiver was involuntary or unintelligent.
Affirmed.
SCHWARTZ, Chief Judge (dissenting).
Everyone agrees that a defendant's waiver of his fundamental right to trial by jury may be validly effected only when it is voluntarily and understandingly made with full knowledge of just what he is giving up. The dispute in this case does not therefore concern a substantive, but rather a vital and far-reaching procedural issue: whether a showing that a valid waiver has occurred should appear in the record of the cause itself as presented on direct appeal, or whether the defendant must negatively show in post-conviction proceedings that a non-jury trial was not properly agreed to. Judge Ferguson's scholarly and comprehensive opinion establishes that an affirmative demonstration of a proper waiver is not required either by the United States Constitution, at least as presently interpreted by a sharply-divided Supreme Court in Justice Rehnquist's opinion in Marshall v. Lonberger, ___ U.S. ___, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), or by the terms of Fla. R.Crim.P. 3.260. I do not take issue with these conclusions. I do believe, however, that the court's rejection of that principle, as an independent matter of our own authority to consider its merits, is neither a wise nor a sound decision. This conclusion is founded upon two distinct bases: one of lofty proportions; the other, perhaps more mundane.

I
Treating the grander consideration first, it is a fundamental, undoubted proposition of law that every presumption is indulged against the existence of a waiver of a significant constitutional right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Since that is true, such a waiver, it is invariably said, cannot be presumed "from a silent record." E.g., Boykin v. Alabama, 395 U.S. 238, 242, 243, 89 S.Ct. 1709, 1711, 1712, 23 L.Ed.2d 274 (1969). The court, however, has put these rules on their heads so that, on the one hand, an effective jury waiver is presumed on a tomblike transcript and record which contain only a signature written under circumstances which are entirely unknown and, on the other, the defendant is required to bear the burden to show otherwise in a Rule 3.850 or federal habeas corpus proceeding. See opinion of the court, at n. 5.
It seems to me that the only real, if totally unspoken, ground upon which this yawning difference may be rationally explained is that the right to a jury trial is not significant enough to justify the contrary, favored treatment and that it occupies a lower rung on the ladder of constitutional values than other more important ones such as, for example, the right to counsel, as to which a record like this is indisputably insufficient. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). There is no need to document the philosophical or historical reasons which support my complete disagreement with any such implied disparagement of the right to trial by jury or its relegation to a mere "tactical decision" in the course of trial. As was said in People v. Losacano, 29 Ill. App.3d 103, 329 N.E.2d 835 (1975):
Where the record is silent, as it is in this case, of anything from which it can be *254 inferred defendant expressly and understandingly waived his right to trial by jury, we believe such deficiency is not merely error, as conceded by the state in this case, and can not be regarded as merely harmless error having no substantial effect either on the defendant's rights or the propriety of his conviction.
* * * * * *

The right to trial by jury like the right to be represented by counsel are of such vital importance that the absence of prejudice can not be assumed where the record fails to disclose their proper waiver. [e.s.]
329 N.E.2d at 839-40. In Boykin, which, whether or not it remains an authoritative decision of the Supreme Court, is still, I take it, the law of Florida, McCrae v. State, 395 So.2d 1145, 1154 (Fla. 1981), Justice Douglas pointed out:
Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.
395 U.S. at 243, 89 S.Ct. at 1712 (footnote omitted). Applying this reasoning, I fail to see how we can presume a waiver of any one of these rights, especially the one which is probably the most significant, from the record before us.

II
Turning to the more practical reason for my dissenting view, the effect of the majority's conclusion is to relegate to post-trial proceedings, conducted long-subsequent to the actual events, the determination of whether, in fact, before the waiver was signed
the defendant was advised by his attorney of his right to trial by jury, the consequences of relinquishing that right, and any advantages to be expected therefrom, all of which makes for the knowing and intelligent waiver required by Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).
Opinion of the court, p. 249 (footnotes omitted). Thus the court has encouraged, indeed necessitated, just what was so aptly characterized in Boykin as the "spin-off of collateral proceedings that seek to probe murky memories," 395 U.S. at 244, 89 S.Ct. at 1713, and which, for that reason, should instead be forestalled or obviated altogether. In this present instance, the disadvantages of that technique are exacerbated by the fact that the issue later to be determined will likely involve the resolution of obviously undesirable disputes between the defendant and his lawyer about who said what to whom in the hallway or the holding cell or in whispered conversations at counsel table months or years before. See, e.g. Krueger v. State, 84 Wis.2d 272, 267 N.W.2d 602 (1978). Moreover, the professional self interest of the (now-previous) attorney will be in unseemly direct conflict with that of his former client, who must, in turn, establish that his lawyer did not act with competence. Since all this can be avoided in almost every case by the simple expedient of a brief colloquy between the court and the defendant spread upon the record, the most elementary principles of sound judicial administration dictate the adoption of that requirement.
Based on many of these considerations, a number of courts have indeed imposed such a colloquy requirement on direct appeal, either in the absence of a controlling rule, e.g., Rice v. People, 193 Colo. 270, 565 P.2d 940, 942 (1977) (en banc) ("That expensive and time consuming process [of proceedings on remand] is rarely necessary where the record reflects a personal expression of the defendant's desire to waive trial by jury."); State v. Irving, 216 Kan. 588, 533 P.2d 1225 *255 (1975); Ciummei v. Commonwealth, 378 Mass. 504, 508, 392 N.E.2d 1186 (1979), or even though the applicable rule, like Florida's, does not go nearly that far. United States v. Scott, 583 F.2d 362 (7th Cir.1978); United States v. Delgado, 635 F.2d 889 (7th Cir.1981) (requiring complete interrogation by trial judge in open court although Fed.R. Crim.P. 23(a) provides only for signed written waiver); Walker v. State, 578 P.2d 1388 (Alaska 1978); see United States v. David, 511 F.2d 355 (D.C. Cir.1975); People v. Losacano, supra; see also Countess v. State, 286 Md. 444, 408 A.2d 1302 (1979); People v. Corbin, 109 Mich. App. 120, 310 N.W.2d 917 (1981); Hawkins v. United States, 385 A.2d 744 (D.C.App. 1978); State v. Kehoe, 59 Ohio App.2d 315, 394 N.E.2d 1022 (1978). I would follow these decisions, and, like Rice and Irving, adopt ABA Standards for Criminal Justice Waiver of Jury Trial 1.2(b), which states:
The court should not accept a waiver unless the defendant, after being advised by the court of his or her right to trial by jury, personally waives the right to trial by jury, either in writing or in open court for the record.

III
In my opinion, therefore, the very minimal requirements of Viggiani should be considerably expanded, and certainly not eliminated as the majority holds. Under no circumstances can I agree to taking the remarkably retrogressive step, one which is totally unprecedented in our state, of approving a jury waiver on the strength of a name scrawled on a piece of paper alone. I would grant Dumas a new trial.
BASKIN, J., concurs.
NOTES
[1] We ordered a rehearing en banc on the court's own motion pursuant to Florida Rule of Appellate Procedure 9.331(c) in order to maintain uniformity in the court's decisions. A potential for conflicting decisions is apparent from Viggiani v. State, 390 So.2d 147 (Fla. 3d DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981), and Washington v. State, 414 So.2d 522 (Fla. 3d DCA 1982). Although at the time the original opinion in Washington v. State was written the facts known to the court were indistinguishable from the facts present in Viggiani v. State, the court, finding that the defendant's constitutional rights were fully protected, upheld the waiver as valid. Since that holding was not influenced by the important factor, noted by the court itself  that the waiver was executed under former Rule 3.260, Florida Rules of Criminal Procedure, which required court approval  Washington v. State, as originally written, is incorrect. In addition, the concurring opinion in Washington proposed that from a record recitation of waiver it is presumed that the defendant executed the written waiver in court, knowingly and intelligently  a statement which expressly conflicted with Viggiani. On rehearing in Washington it was for the first time brought to the court's attention that the defendant's waiver of jury trial was in fact in open court and with the advice of counsel.
[2] In 1972, a revision of Florida Rule of Criminal Procedure 3.260 abolished the requirement for court approval of a jury trial waiver. Nevertheless, cases decided after 1972 have continued to apply that standard by requiring as a substitute for court approval either the execution of the written waiver in open court or an oral acknowledgement of the waiver in open court by the defendant or his attorney. Washington v. State, Viggiani v. State, Groomes v. State, 401 So.2d 1139 (Fla. 3d DCA 1981); Sessums v. State, 404 So.2d 1074 (Fla. 3d DCA 1981); Durcan v. State, 383 So.2d 248 (Fla. 3d DCA), rev. denied, 389 So.2d 1109 (Fla. 1980); Russell v. State, 342 So.2d 96 (Fla. 3d DCA 1977); Kinser v. State, 291 So.2d 80 (Fla. 3d DCA), cert. denied, 297 So.2d 832 (Fla. 1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975). The previously cited cases rely upon Quartz v. State, 258 So.2d 283 (Fla. 3d DCA), cert. denied, 263 So.2d 825 (Fla. 1972), decided while the former Rule 3.260 was still in effect, which held that the above-described substitutes for approval of the court constitute full compliance with the rule as it existed prior to revision. In light of the rule change which dispenses with the requirement for court approval, it is no longer necessary in post-1972 cases that the waiver be executed in court or orally confirmed on the record. The execution of the waiver in a hallway outside the courtroom, which is not prohibited by the present rule, would not make the waiver, as a practical matter, any less intelligent. So the place where a defendant is informed of his rights, and makes the knowing and intelligent decision to waive jury, is no longer of consequence.
[3] The authenticity of defendant's signature above the stamped waiver is not challenged.
[4] The presumption of law that a waiver of jury trial was made with knowledge and understanding cannot arise where a defendant makes the waiver without the benefit of counsel. Such was the situation in Enrique v. State, 408 So.2d 635 (Fla. 3d DCA 1981), rev. denied, 418 So.2d 1280 (Fla. 1982), which held, on direct appeal, that waiver of jury trial was not shown to have been knowingly and intelligently made despite the existence of a written waiver. The result in Enrique is consistent with our holding here as (1) Enrique was not represented by an attorney, (2) there was no adequate on-the-record inquiry by the court, and (3) there was no indication that defendant obtained from other sources the information necessary to make for an intelligent waiver.
[5] The presumption discussed in Washington v. State, 414 So.2d 522, 523 (Fla. 3d DCA 1982) (Pearson, J., concurring), that proceedings are conducted with regularity and that the trial court discharged its responsibility according to the law and in good faith, is of no assistance here. Since under the revised Florida Rule of Criminal Procedure 3.260 trial by the court is mandatory when the defendant and the state agree, there is no act of the court, incident to the waiver, to which the presumption of regularity will attach. Moreover, Wilson v. State, 164 So.2d 43 (Fla. 2d DCA 1964), upon which the concurrence in Washington v. State relies, and King v. State, 157 So.2d 440 (Fla. 2d DCA 1963), cited by Wilson v. State, involves collateral attacks upon judgments of conviction and sentence to which the presumption of regularity is applied. Cases citing King v. State in support of the presumption of regularity are collateral attack cases, nor direct appeals. E.g., Dykes v. State, 162 So.2d 675 (Fla. 1st DCA 1964). In direct appeals there is no reason for the presumption of regularity and there is considerable doubt that it has any application. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (when collaterally attacked, as habeas corpus, a judgment of the court carries a presumption of regularity).
[6] McCormick, Handbook of the Law of Evidence § 343 (2d ed. 1972).
[7] Justice Harlan, in a strong dissent in Boykin v. Alabama, joined by Justice Black, was of the view that a conviction is constitutionally valid despite the omission of any judicial inquiry of record at the time of the plea, subject only to a collateral proceeding to determine whether the plea was actually voluntary. Where voluntariness, an essential element of a valid guilty plea, does not affirmatively appear from the record, the dissent would, of necessity, indulge in a presumption of fact in order to affirm the conviction  a position consistent with the Marshall v. Lonberger holding.
[8] Because the right of an accused to trial by jury is fundamental, Floyd v. State, 90 So.2d 105, 106 (Fla. 1956), an infringement of that right constitutes fundamental error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Clark v. State, 363 So.2d 331 (Fla. 1978), cited in Durcan v. State, 383 So.2d 248, 249 (Fla. 3d DCA) (Baskin, J., dissenting), rev. denied, 389 So.2d 1109 (Fla. 1980).
[9] Cf. Berry v. State, 203 So.2d 336 (Fla. 2d DCA 1967) (where defendant, after waiving trial by jury, filed a motion in the trial court to set aside the waiver challenging its voluntariness on the basis that when he asked the court for a further continuance it was granted on the condition that he waive trial by jury, and where the record disclosed that none of the defendant's requests for continuance was motivated by a design to delay trial, a new trial by jury was required); United States v. David, 511 F.2d 355 (D.C. Cir.1975) (where the record suggested that defendant's waiver of jury trial was not voluntarily and knowingly made, based on defendant's substantial psychiatric history, a psychiatrist's original report that defendant was incompetent to stand trial, and defendant's counsel's expressed concern to the trial court as to defendant's competency to stand trial and ability to knowingly waive jury trial, a new trial was necessary).